Case No. 16-2142, Susan Mumm v. Charter Township of Superior, Oral Argument that is not to exceed 15 minutes per side. Mr. Besser for the appellant. Thank you, may it please the Court. My name is Matt Besser. I represent Appellant Susan Mumm. I'd like to reserve three minutes for rebuttal. All right. For whatever had happened up until that point, on the morning of February 21, 2014, the status quo was that Susan Mumm was keeping her job. Her supervisors had just told her, you're not going to get fired. That changed as soon as she complained about the pay disparity between herself and a male labor lawyer to sue the township over it. There are two central issues for the Court. The first is whether her complaints were protected activity under either federal law or Michigan law or both. And the second is whether she produced enough evidence of pretext to let a jury sort this all out. On the first question, as to pretext, as to protected activity, there's actually a sub-issue about the differing standards under federal and Michigan law. But under either standard, what Susan Mumm did in the February 21 meeting was protected. She said that she was tired of being underpaid for all these years in relation to Keith Lockheed. She said that she was filing a lawsuit about this. She said that she had hired a labor attorney to do that. She didn't actually say she was filing a lawsuit about being underpaid, did she? I believe that she did, Your Honor. What she said was, quote, I'm tired of being underpaid all these years in relation to Keith Lockheed, and then said, quote, I am, quote, filing a lawsuit about this. Close quote. That's from her deposition testimony. Why is it automatic? Go ahead, Judge Norris, go ahead. No, I'm going to say, we can read the record. Well, I was just going to say, why is it automatic that if you say you're underpaid relative to another worker who happens to be a different gender, that you're bringing gender discrimination claims? I mean, it's just quite... My first reaction is most people that complain about being underpaid, it's not race, gender, or anything else. It's just, I do more than that person, and I'm not appreciated. Why do we assume it's gender discrimination? Well, that might not always be the case. If we look at the particular facts of this case, what seems to have jumped readily to the defendant's mind, to Supervisor Schwartz's mind, was a claim of sex-based discrimination. The EEOC guidance tells us that the question is whether the, quote, circumstances show that what the plaintiff complained about, quote, would reasonably have been interpreted as opposition to employment discrimination. That seems to be how Schwartz interpreted it based on his query to her after her complaint. What does Schwartz actually say? Does he actually say sex discrimination, or does he say something else? Well, what he says was, have you been sexually abused? Now... Okay, so that's a little different. It is a little different, but it would have been rather a non sequitur to jump to sexual abuse, just as the same as it would have been to say, have you been held up at gunpoint? It would be a reasonable view of the record to presume that either he said, or in the heat of the moment, and we know that this was a stressed and emotional meeting where everything happened so fast, he meant or he said sexual harassment. And this court has said, both in Yazian and in Lewis v. Quaker State, that an employer's reaction can be evidence of protected activity. It's a reasonable reading of the record to presume that, although he might not have hit the nail on the head, he was certainly in the right ballpark with that question. The reason that implicit complaints are protected, and that comes from the EEOC guidance, which is entitled to great deference that this court has held. The reason that those implicit complaints are protected comes from the circumstances in which these types of meetings occur. They occur in situations where employees are often frazzled in meetings like this one, which are often stressed. And if we are too stringent with what we protect and what we don't, we get to a situation where we don't protect people simply because they lack either the sophistication or the composure to articulate themselves properly at a time when they are fearful or frazzled. And that's why the case law and the guidance allows for some play in the joints as to what is implicit but still protected. Counsel, if I might interrupt Judge Norris, you of course need to point to that one statement that she makes on the 21st, but she's had a long history of just complaining, complaining. She's been suspended without pay at least twice. She files a written request for a pay raise several years before in which she complains about Lockheed, but also three other women. Now these people have all this context, don't they? I'm sorry, I didn't catch the last part of that, Judge. Of all that, did you say context? They have that in context. They know the history. Why do they suddenly jump and think, uh-oh, only this guy, only a male? I mean, they know about this. She's been complaining for 15, maybe all 18 years that she's underpaid, but she never says it's because males earn more than I do because I'm a woman. So you're saying they're required just because he's a male. She never mentions he's a male. She just mentions he's Lockheed. Well, Judge, there are a couple responses to that. First of all, it probably goes without saying, but it's obvious to everyone in the room, Keith Lockheed is a male. But to your point about the history, when she complained on February 21st, she didn't bring anybody else up, including the other three folks that she had complained about something like a decade earlier. So, you know, those have to be set aside because these are jury questions, and whether a jury believes she was a good employee or a bad employee, a constantly complaining employee, those are arguments for closing. Those are questions for a jury to believe or disbelieve. With respect to the point about not referencing gender specifically, that is true. She did not say Keith Lockheed, who is a male. That is not required, though, because the EEOC guidance tells us that the question is what the circumstances show. How would it have reasonably been interpreted? And there is at least some evidence in the record that one of the supervisors interpreted it in the realm of sex. There are two cases that support this conclusion. The first is from this court, the Yavdian case, in which the court held there was sufficient evidence of protected activity as to two types of claims. One, as to national origin, and two, as to religion. But there seems to have been no statement made by the plaintiff in Yavdian about religion. And yet the context, including the threat of litigation, showed that there was enough for a jury to believe that the employer reasonably believed that was the complaint. And then the second case is under Michigan law. We haven't really touched yet on the different standard, the lower standard under Michigan law. But the Seminole-McLemore case, there was no explicit reference to sex discrimination by the plaintiff in McLemore. It was enough in that case that the plaintiff might be complaining about, quote, some type of prohibited bias. And the same is true here. She might be complaining about some type of prohibited bias from the context. And so even if the court were to hold there wasn't quite enough construing the facts in her favor under Title VII, Michigan law is a different bar. It's a lower bar. So I'm going back to Judge Norris's questions. I can't remember. These prior complaints of hers were not specifically, they were about pay, but they weren't about gender discrimination. Am I right about that? That's correct. That's correct, although it's also true that the fact that she made even related complaints on the same topic or touching on the same topic years before, of course, doesn't mean that she necessarily was not complaining about gender discrimination later. And, you know, if we talk about the continuum of time, the chronology, we don't have to look 10 years back to get some context. If we look four days forward, she filed a pay discrimination charge with the EEOC just four days after her complaint. So to the extent the chronology. Go ahead, Judge Giddens. Can you try to put a little timeline other than the decade that there was before for the other complaints? Can you just sort of take the incidents that Judge Norris referred to and give us a little bit of a timeline for when those occurred? I don't want to guess and be wrong. My memory is, and I'll look while opposing counsel speaks, my memory is that her earlier complaint, at least the initial one, was in something like 2005 or 2006. What position did the individual who were involved in the decision to fire her in 2014, what was their position at the time of the earlier complaint? Well, at least Mr. Schwartz, who seems to be one of the driving factors, if not the driving factor, the township supervisor, he was not yet with the township at that point. As for Phillips, the clerk, and McKinney, the treasurer, I just don't remember, Your Honor, if I ever knew whether they were already in their positions. But typically what inferences could be drawn from that would depend very heavily on the timing and also to whom the complaints were made. I see my time's up. May I finish my response, Your Honor, or would you like me to respond? Let me just answer that one question. I think it's pretty much a yes or a no. Right, the answer is yes. Certainly if those folks weren't there, it diminishes any inference that could be made, but even if two of the three were, it would require a negative inference against her, which is not the role of us here today on summary judgment. We appreciate your keeping up with your time, and I'm just going to check with Lance. Do you agree his time is up, Lance? That's correct, Judge. Okay. You'll have your rebuttal time. All right, Ms. Dembinski? Good morning, Your Honor. Nancy Dembinski on behalf of the appellee. Your Honor, to answer the question that came before, because I had the courtesy of being able to hear the question while not being the person it was directed to at the time, Mr. Phillips, the clerk, became the clerk in about 2008, so he was not present, or at least he was not the clerk at the time of that 2005-2006 prior pay disparity complaint that Susan Mumm made. Your Honor, we're asking that the court affirm the district court's decision to grant summary judgment to the township. Again, number one, because her allegations or protected activity is simply too vague under either standard. Excuse me, but what basis would your client think there could be for filing a lawsuit given this pay discrepancy that was described other than an employment discrimination suit? What other meaning could they have given to that? Your Honor, I don't want to speculate for them, but she did mention a labor attorney, and in her complaint number three that she submitted on February 25th, which is part of the record, she indicates that she was tired of being underpaid for a decade given the increased complexity of her job. So even then, post-mortem, if you will, she is tying her pay request to a complexity of her job, and therefore it was unclear what she was asking about. And as counsel pointed out, the supervisor asked, you know, have you been sexually abused? And she said no, but I mean, I think that means he's unclear. What is she talking about? Why is she so, what is the problem? That is, he was asking for clarity, and she still didn't provide it. And even in, I'm sorry. Excuse me, but isn't February 25th the date of the EEOC charge? I think that was March 4th was the EEOC charge. Okay, so it wasn't four days after the meeting. The EEOC charge is dated. I understood Mr. Besser to say four days after. Oh, I see. Oh, no, he's right. She signed it February 25th. The notice of charge that I was looking at that was directed to the township was signed March 4th, 2014. Well, what do you think, did she also check the little box that said gender discrimination? She checked the box saying retaliation and sex and equal pay. Okay. That's not very unclear, is it? Not in the EEOC charge, but that is not the protected activity that you relied upon. I understand that, but you suggested to us that her EEOC charge was unclear, and I would suggest that perhaps that's not the case when you look at what she's charging in the first place. I think Judge Sutton had a question. Sure. Well, you mentioned the talk about hiring a labor lawyer, but that really doesn't lead you down a false path because she wasn't a union employee, right? No, she wasn't. So it couldn't have been a union-related point. Had her prior, you know, I think it is important to put the complaints on February 21st into context, and I think it probably does count against her that she'd made prior generalized complaints, but had she threatened to sue before? Not that I'm aware of by this record, Your Honor. Well, doesn't that change things a little bit? I mean, it's one thing to say I'm underpaid, I'm not appreciated, this job's hard, why am I not getting more money, but it's another to, you know, actually compare yourself directly to somebody else and then say you're going to sue. At that point, you've got to link the dots. Well, Your Honor. It's a rational actor. They were uncertain. I mean, it is unclear what she was suing about other than she felt she should get paid more. That was the follow-up request by the supervisor, you know, asking her, why are you doing this or what do you mean? He's asking for clarification, and she doesn't provide it other than to dispel any notion of sexual abuse. But you would agree that if her statement has been, I'm tired of being underpaid relative to men for all of these years, and therefore I'm going to sue, that would work, right? Yes. Okay. So the question is the absence of relative to men and the addition of a specific comparison to one male, and I agree with you. There's not just one inference there, but I guess I'm struggling with why that isn't a jury question, and, you know, I don't know. I guess that's my question for you. Sure. I mean, Your Honor, she compared herself to another employee who happened to be male. I mean, after the fact, she says, I believe it was sex discrimination in her EEOC complaint, and I wasn't before trying to say the EEOC complaint was unclear. I apologize if I misspoke. That wasn't my point. But during this discussion, she's complaining about Keith Lackey, who she's complained about before, as well as others. So it wasn't clear that she was saying it's because he's a man or anything other than because he's Keith Lackey, because who he is. So if they went back after the conversation and they said, okay, why do you think she's going to sue, what other theory was there besides gender discrimination? That wasn't asked, and a jury can't speculate. No, no, no. I don't mean to ask the question. I'm not even pretending they had that conversation. I'm just hypothesizing three neutral observers hear this, and they go back and say, I wonder what she's going to sue about. I just don't know where else this would point other than gender discrimination. She didn't mention age. I mean, she didn't mention anything other about Keith Lackey other than he is Keith Lackey. So, again, it was unclear. They didn't know that that was the purpose of the questions, Your Honor, about the sexual abuse or have you been threatened. They were asking for clarity because it wasn't clear what she was talking about. Is she older than Keith Lackey? That I don't know. I don't believe so, but I don't know for sure. I would have to re-scan the record for that, Your Honor. I don't know. The point being, again, Your Honor, that it was unclear based even on the questions that were being asked of Mrs. Mum after she laid this all out. She wants $10,000. She wants the IT contractor not to be fired. Or if all else fails, she'd like a severance pay and to call it what it is. There's been a breakdown in the employment relationship. Those were the things that she has articulated to three of the township supervisors out of nowhere. This lead-in to this were discussions about discipline related to her job performance. All of the discussions in February had focused on that. And now there becomes this discussion about pay disparity out of nowhere. It's a very fluid situation. And as the township officials have indicated, it flabbergasted them. And they immediately became aware that this employment relationship broke down. Even as Mrs. Mum herself said during the course of that discussion, that thought was not unique to the township. She had suggested it herself. For those reasons, we would request that the court find there was no protected activity, it being too vague, just requiring too much guesswork. In the scope of the pretext, Your Honor, there has been some discussions that touch on that. And I want to double-check my time here. The district court indicated that the township's termination decision that resulted from their lack of trust or loss of trust culminated after a number of prior instances of misconduct by the plaintiff. We agree with that. But what do we do about the fact that two days earlier, before she threatened to sue, they decided to keep her? I mean, I'm with you that this is an employee that there may well have been grounds to fire, but isn't that just a tough piece of evidence that just a couple days earlier they made the decision to keep her? A couple days earlier they decided to not fire her and give her a one-day suspension. After the supervisor was persuaded not to fire her, that was essentially his testimony. He had wanted to fire her because of her job performance issues. So what happened? He looked more carefully at her record in the next couple days? No, Your Honor. The suggestion is, or the testimony has been, that when this employee came in saying, you're going to give me $10,000 and you're not going to fire the IT contractor, or I'd like a year's severance pay and let's just call it quits. Or I'm going to sue you. And I'm going to sue you. That the township said, wait a minute, we just disciplined you for one day and you're coming in here making ultimatums to the point where everyone agrees there seems to be a problem here, a loss of trust. You've given a bunch of reasons that I as an employer would have been pretty happy to fire, I quite get it. But one of the possibilities relates to the fact that she said she's going to sue us. That made them angry, and that surely is protected conduct if it's not too vague what the suit's about. I'm sorry, I didn't mean to cut you off. Even in the Fox case that is cited, however, one of the allegations in that case was the plaintiff said, I'm going to sue you. There was no mention of discrimination in that case, but there was the mention that suit was going to be filed. And that wasn't enough to be protected activity, whereas here, similar situation. There's a claim that that was supposed to signal that that was discrimination or a suit based on discrimination, but there was nothing tying the two together. I apologize, Your Honor. I just lost my pace in my argument. Well, maybe Lance could tell us where we are time-wise. I see that I have about two minutes left. I show that you have about two and a half minutes left. Sure. Unless the court has any further questions, the township would rely on its brief. Brief. Okay. It seems there are no questions, and so we'll go to Mr. Besser for his rebuttal. Thank you, Your Honor. I have two points to make. Mr. Besser? Yes, Your Honor. Before you start, I'm just curious. You lost on the equal pay claim, and you didn't appeal that. So it seems to me that some kind of law of the case. What's your remedy if you win here and we send it back and you win in the district court? Well, Your Honor, as you know, 2000E-3 or the comparable Michigan law stand separate from the underlying claim of discrimination, and even if she was wrong that Lockheed was paid more because of sex, it's still unlawful to fire her for making that good-faith allegation. What are your damages? What are you going to get? Well, Your Honor, not to put too fine a point on it, as I'm pro bono counsel, I wouldn't get anything. Ms. Mum would be entitled to her back pay, reinstatement, or front pay, depending on what a court and a jury would rule. But you lost it. You lost the back pay, didn't you? No, Your Honor. It would be for the termination from the point in which she was fired going forward, but not the equal pay going backward. Well, I mean, the point, she's still entitled to recover what she would have lost in terms of pay as a result of the firing under Title VII, even if she did not pursue her Equal Pay Act claim on appeal. And I guess just to make the record clear, I believe that Ms. Mum was pro se at the time we appointed you, so that you did not make the decision not to pursue the Equal Pay Act claim. Is that right? That's absolutely right. There were two points I'd like to make on rebuttal, and I see a minute left. The first is, as to the questions about what other basis would there be for her complaint, what other theory, and that is sort of the point, a jury could look at this and say, you know, the Occam's razor, the most obvious answer is likely to be the correct one. She was not a union employee. The place it seems that the employer went and where a jury might go is that, yes, she was referring to sex discrimination, and in both McLemore under Michigan's lower bar and Yazdian under Title VII, a specific reference to gender has not been required. The second point is about the prior complaints in my 10 seconds left. To go back in time several years and look at prior complaints she has made and infer from those what she said in the meeting would be to make a negative inference against her, which is not this court's role on summary judgment. With that, my time is up. I thank the court for its attention and consideration. We thank you both for your argument. We'll consider the case carefully. Mr. Besser, we're especially appreciative of your having accepted the appointment in this case. I think it was useful to have briefing by counsel and argument, and it's been a service to the court to have the case presented in that way. With that, I believe we can adjourn. Thank you. Travis, if you could just see the attorney's disconnect and verify when that's been done. One second. Thank you. Disconnecting. All the attorneys are offline. Okay. Judge Gibbons, again, I'm just going to hang up from the courtroom, and you can confer with Judge Norris and Judge Sutton. If anyone happens to get disconnected, you can press star zero, and Travis will come back on the line to help you. Okay. Thanks. Have a good one. You, too. Thanks, Leia.